In re ERICKSON PARTNERSHIP, Ronald and Lonna Erickson, Debtors.

Rick A. YARNALL, Chapter 12 Trustee, Appellant,

v.

ERICKSON PARTNERSHIP, Ronald Erickson and Lonna L. Erickson, Appellees.

The United States Trustee, William P. WESTPHAL, Appellant,

v.

ERICKSON PARTNERSHIP, Ronald Erickson and Lonna L. Erickson, Appellees.

Nos. Civ. 87–4177, 87–4178.

United States District Court, D. South Dakota, S.D.

March 11, 1988.

Rick A. Yarnall, Sioux Falls, S.D., pro se.

Andrew J. Schmid, Minneapolis, Minn., for appellant U.S. Trustee.

Jonathan K. Van Patten, Vermillion, S.D., for appellees.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

The United States Trustee and the standing Chapter 12 Trustee take this appeal from an order of the Bankruptcy Court dated August 27, 1987, confirming debtors' Chapter 12 plan of reorganization. Specifically, the trustees argue it was error for the lower court to confirm debtors' plan because it allowed debtors to make direct payments to a secured creditor holding a modified claim, thereby avoiding the ten percent trustee fee assessed on payments made through the trustee.

## FACTS

The facts leading up to the debtors' filing of their Chapter 12 reorganization plan are set out in *In re Erickson Partnership,* 68 B.R. 819 (Bankr.D.S.D.), *aff'd,* 74 B.R. 670 (D.S.D.1987). The contents of the debtors' plan are set out in *In re Erickson Partnership,* 77 B.R. 738 (Bankr.D.S.D.1987). For this reason, only a brief summary of the facts will be presented here.

Debtors' plan provides for the payment of one priority creditor, six creditors with secured claims, and payments to holders of unsecured and undersecured claims. In their plan, debtors provided that payments to two secured claim holders, First Federal Savings and Loan Association (First Federal) and Metropolitan Life Insurance Company (Metropolitan), will be made directly by the debtors, thereby avoiding assessment of the ten percent trustee fee on those payments. The Bankruptcy Court confirmed debtors' plan over the objection of the trustees to debtors' proposed direct payments.

On appeal, the trustees concede that debtors may properly make direct payments on First Federal's claim, as that claim is current, and debtors' plan proposes that First Federal be paid according to the terms of the original note and mortgage. The trustees argue, however, that it was error for the Bankruptcy Court to allow debtors to make direct payments to Metropolitan because Metropolitan's claim is modified by debtors' reorganization.

## STANDARD OF REVIEW

When reviewing a bankruptcy court decision, the appropriate standard of review is clearly erroneous for findings of fact and de novo for conclusions of law. *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987). *See also* Bankruptcy Rule 8013.

## ISSUE

The issue on appeal is what limits does the bankruptcy code place on a judge's discretion to allow Chapter 12 debtors to make direct payments to creditors under Chapter 12 reorganization plans, thereby

avoiding assessment of the ten percent Chapter 12 trustee fee. This issue raises a question of law, and the Bankruptcy Court's decision will be reviewed *de novo*.

## DISCUSSION

28 U.S.C. section 586(e) sets out how individuals appointed as standing Chapter 12 trustees are to be compensated. Section 586(e)(1) provides that these standing trustees shall receive a fee not to exceed ten percent of the payments made under the plan. Section 586(e)(2) provides that standing trustees "shall collect such percentage fee from all payments received by such individual under plans in cases under chapter 12." The parties agree that by this clear language, Congress precluded standing trustees from assessing the ten percent fee on payments not actually received by the trustee, such as payments made directly by the debtor. This is also the position of the Executive Office for United States Trustees. *See Erickson*, 77 B.R. at 751 n. 15.

The parties and the Executive Office also agree that Chapter 12 debtors may make direct payments under reorganization plans. The parties disagree, however, on the circumstances under which direct payments may be made. Debtors contend that by its language, Chapter 12 allows direct payment on secured claims. The trustees argue that the language of Chapter 12 does not allow direct payment, but that direct payments on unmodified secured claims may be made based upon a body of Chapter 13 case law construing Chapter 13 provisions similar to those in Chapter 12.

■ When interpreting a statute, courts must begin by looking at the language of the statute itself. *See Premachandra v. Mitts*, 727 F.2d 717, 725 (8th Cir.1984), *on reh'g*, 753 F.2d 635, 637 (8th Cir.1985). Based on an examination of is language, I hold that Chapter 12 does allow debtors to make direct payments under their reorganization plans.

In setting out the requirements for the contents of a Chapter 12 plan, section 1222(a)(1) provides that: "(a) The plan shall —(1) provide for the submission of all *or such portion* of future earnings or other future income of the debtor to the supervision and control of the trustee *as is necessary for the execution of the plan.*" (emphasis added). When Chapter 12 debtors provide for direct payments, submission to the trustee of that portion of their future income needed to make those direct payments is not necessary for the execution of the plan. Thus, under section 1222(a)(1), that portion of future income needed to make direct payments does not need to be submitted to the trustee.

Similarly, when describing how payments are to be made, section 1226(c) requires the trustee to make payments to creditors under the plan "[e]xcept as otherwise provided in the plan or in the order confirming the plan." This exception to the requirement that the trustee make payments is met when a bankruptcy court confirms a Chapter 12 plan that provides for direct payments by the debtor.

The best expression of congressional intent on this issue, however, is found in section 1225. Section 1225(a)(5)(B)(ii), which provides the requirements for "cramdown" under Chapter 12, speaks in terms of "property to be distributed by the trustee *or the debtors.*" (emphasis added). By this language, Congress clearly recognized debtors' ability to make direct payments.

Finding that by its language, Chapter 12 allows debtors to make direct payments under their plans, the issue becomes what, if any, limits does Chapter 12 place on a bankruptcy court's discretion to approve those direct payments.

■ The only explicit limit is found by comparing Chapter 12's confirmation requirements for unsecured claims with its confirmation requirements for secured claims. *See* 11 U.S.C. §§ 1225(a)(4), 1225(a)(5)(B)(ii). When discussing unsecured claims, section 1225(a)(4) speaks only in terms of "property to be distributed under the plan," unlike section 1225(a)(5)(B)(ii)'s reference to "property to be distributed by the trustee or the debtor." As evidenced by this difference in language, I hold that Congress did not

intend for Chapter 12 debtors to make direct payments on unsecured claims.

█ The only other limitations Chapter 12 places on direct payments by debtors are the general limitations found in sections 1225(a)(1) and 1225(a)(3). Through section 1225(a)(1), for example, direct payments may only be made if they do not discriminate unfairly, that is, if they comply with section 1222(a)(3). And direct payments provisions, as well as the plan within which they appear, must be proposed in good faith to comply with section 1225(a)(3).

The lower court found that debtors' proposed direct payments to Metropolitan complied with section 1222(a)(3) because Metropolitan agreed to the direct payments and because the debtors proposed to pay Metropolitan the stipulated value of its secured claim. *Erickson*, 77 B.R. at 748. The lower court also found that the proposed direct payments to Metropolitan satisfied section 1225(a)(3)'s good faith requirement because Metropolitan agreed to direct payment and because of the self-monitor and remedy device included in the direct payment scheme. *Id.* These findings are not clearly erroneous.

█ None of the parties have referred this Court to any other code limitations on a bankruptcy court's discretion to allow debtors to make direct payments under their Chapter 12 plans and I can find none. The trustees argue, however, that a body of case law developed under Chapter 13, and more recently Chapter 12, acts to limit a bankruptcy court's discretion. Specifically, the trustees argue that this body of case law supports their position that a bankruptcy court can allow debtors to pay only unmodified secured claims directly. I disagree.

The Chapter 13 cases cited by the trustees were decided under a prior version of section 586(e)(2) which provided that the trustee "shall collect such percentage fee from all payments *under* plans." 92 Stat. 2664 (emphasis added). Construing this language, the Chapter 13 cases held that it did not matter whether the trustee or the debtors made the payments when determining whether a payment is made "under" or "outside" the plan for purposes of assessing the Chapter 13 trustee fee. See *Matter of Foster*, 670 F.2d 478, 486–89 (5th Cir. 1982); *In re Case*, 11 B.R. 842, 845–47 (Bankr.D. Utah 1981). All parties agree that whether the trustee or the debtor makes the payment is the critical factor in assessing the Chapter 12 trustee fee under amended section 586(e)(2). Thus, the "under" and "outside" analysis of the Chapter 13 cases has no application to the present issue on appeal.

It should also be noted that the cramdown provision of Chapter 13, section 1325(a)(5)(B)(ii), does not contain the "or the debtor" language of section 1225(a)(5)(B)(ii). Thus, these Chapter 13 courts were not faced with the same question of statutory construction as courts construing Chapter 12's provisions. Further, the fact that Congress changed this language when drafting Chapter 12 but did not amend Chapter 13 accordingly suggests that Congress intended Chapter 12 to be treated differently than Chapter 13.

The Chapter 12 cases cited by the trustees can be divided into two groups. One group of these cases is from non-pilot districts, where the amended section 586(e)(2) had not yet taken effect. *See In re Mikkelsen Farms, Inc.*, 74 B.R. 280 (Bankr.D. Ore.1987); *In re Hagensick*, 73 B.R. 710 (Bankr.N.D.Ia.1987); *In re Meyer*, 73 B.R. 457 (Bankr.E.D.Mo.1987). These courts used the same "under" and "outside" analysis as the earlier Chapter 13 cases. *See Hagensick*, 73 B.R. at 713–14. Because the "under" and "outside" analysis is no longer meaningful under amended section 586(e)(2), these cases have no application to the present issue on appeal.

The second group of Chapter 12 cases cited by the trustee are from pilot districts. Even so, two of these cases did not consider the language of amended section 586(e)(2), but instead relied on the "under" and "outside" analysis of the Chapter 13 cases. *See In re Rott*, 73 B.R. 366, 375 (Bankr.D.N.D.1987); *In re Citrowske*, 72 B.R. 613, 615 (Bankr.D.Minn.1987). And two of these cases that did consider section 586(e)(2) as amended apparently found no

significance in the change, as these two courts also continued to use the familiar "under" and "outside" analysis. *See In re Greseth,* 78 B.R. 936, 940 (Bankr.D.Minn. 1987); *In re Hildebrandt,* 79 B.R. 427, 428 (Bankr.D.Minn.1987). None of these cases considered the issue on appeal in this case, namely, whether Chapter 12 debtors may make direct payments and, if so, whether Chapter 12 limits the types of claims bankruptcy courts may allow debtors to pay directly. As a result, these cases provide no assistance in deciding this appeal.

Other than the provisions of sections 1225(a)(1), (a)(3) and (a)(4), I can find no limitation on the type of claims bankruptcy courts may allow debtors to pay directly in their Chapter 12 plans, in either the language of Chapter 12 or the case law interpreting that language. The lower court held that debtors' proposed direct payments to Metropolitan met the requirements of those sections, and that finding is not clearly erroneous. The lower court's order approving these direct payments, therefore, must be affirmed.

I am aware that this ruling will result in a reduction in fees collected by Chapter 12 standing trustees. I note, however, that this reduction in fees corresponds to a reduction in work. Chapter 12's trustee fee scheme contemplates compensating trustees only for services performed. *See* 28 U.S.C. § 586(b) (standing trustees should only be appointed "if the number of cases ... so warrants.") This decision is entirely consistent with that scheme. This decision recognizes that the language of Chapter 12 authorizes debtors to undertake some of the standing trustee's duties themselves, thereby saving the fees standing trustees would be entitled to if the trustees had perform the work. This was Congress's intent, as evidenced by the language of the provisions analysed above. If giving effect to this intent will undermine the funding of the trustee system, as the trustees suggest, a remedy must be sought in Congress, not the courts.

ORDERED ACCORDINGLY.