## In the Matter of Chester Alvin BALDWIN, Debtor.

### Bankruptcy No. 88–30102 HCD.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

March 27, 1989.

### MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter is before the court on confirmation of debtor's MODIFIED CHAPTER 13 PLAN ("Plan"). The standing chapter 13 Trustee, Tedd E. Mishler, Esq. ("Trustee"), filed an OBJECTION TO CONFIRMATION and the matter came on for hearing. For the reasons set out below, the debtor's Plan is CONFIRMED and the objection of the Trustee is overruled. The debtor is directed to file a proposed confirmation order to reflect the recommendations set out in this Memorandum on or before April 10, 1989.

### Background

On the issue of confirmation of the debtor's modified plan, the debtor seeks to make the following changes:

1) the deletion from the "General Unsecured Claims" category of:

Mishawaka Rubber Credit Union . $1,274.82
South Bend Transpo                2,135.47

which creditor's claims were replaced by:

2) the addition of a Co–Debtor Claim by Mishawaka Rubber Credit Union in the amount of $1,000.00 at ten percent interest; and

3) the addition of a Professional Unsecured Claim by South Bend Transpo in

the amount of $1,600.00 at twelve percent interest; and

4) the addition to the "General Unsecured Claims" category of:

Bank of New York/Visa $1,748.07
American Express/Capital credit 626.78
Personal Finance 994.58

The gist of these changes amounts to the addition of three unsecured creditors and the alteration of treatment in the claims of South Bend Transpo and Mishawaka Rubber Credit Union.

As a result of the debtor's attempt to modify the confirmed plan[1] the Trustee filed his objection. The debtor's original plan of reorganization was confirmed at a time when the Trustee charged three and one-half percent trustee's fees on mortgages for which he made payments to the creditor on behalf of the debtor, and ten percent trustee's fees on all other payments he made on behalf of the debtor. Since that time, the Trustee's statutory fees have been changed[2] and the current rate is nine and one-half percent[3] on all funds that pass through the Trustee's hands. The Trustee no longer has the discretion to lower the trustee's fees he charges on mortgage payments he makes on behalf of the debtor.

In the debtor's modified plan, he has attempted to alter other terms of the confirmed plan but has not altered the treatment of the mortgage payments or the Trustee's fees on that mortgage payment.

The Trustee contends that once the debtor makes any attempt to alter or modify the confirmed plan, then the Trustee's rights to object to his treatment under the plan, even if not modified, are reawakened. He now objects to the trustee's fees set out in the confirmed plan of three and one-half percent on the mortgage payment and ten percent on all other payments. He argues that the appropriate amount of trustee's fees to be charged must be controlled by the guidelines set out for his statutory fees

by the Office of the United States Trustee. Therefore, he demands that the court order the debtor to pay nine and one-half percent in trustee's fees for all funds that pass through the Trustee's hands.

The debtor, on the other hand, argues that the confirmed plan is *res judicata* as to the rights of the Trustee and the trustee's fees set out in the confirmed plan. He contends that the mere modification of the confirmed plan to allow more payments to other creditors, would not allow the Trustee, whose rights have *not* been altered by the modification, now to object to treatment he did not object to at confirmation.

## Discussion

Eleven U.S.C. § 1329 sets out the limitations whereby a confirmed plan may be modified. That section states in pertinent part:

**§ 1329 Modification of plan after confirmation.**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) after the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Prior to the 1984 amendments,[4] only the debtor could modify a confirmed plan. *In re Tschiderer*, 73 B.R. 133, 134 (Bankr.W. D.N.Y.1987). The purpose of the 1984 amendments to § 1329 was to allow the trustee or the holder of an unsecured claim

---

**1.** The debtor's amended plan of reorganization was confirmed on June 29, 1988.

**2.** *See,* 28 U.S.C. § 586(e)(1)(B) and (e)(2).

**3.** This is a fixed percentage set by the Executive Office for the United States Trustee, and is effec-

tive from October 1, 1988 to September 30, 1989 for Mr. Mishler.

**4.** Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353.

to seek modification of the confirmed plan. 5 *Collier on Bankruptcy* (MB) ¶ 1329.01[1][b] at 1329–4 (15th ed. 1988, supp. December 1985). The legislative history reveals that the post–1984 amendment version of § 1329 was based on the same ability to pay standard as the pre–1984 version, allowing upward or downward adjustments in the terms of the "... plan payments in response to changes in the debtor's circumstances which substantially affect the ability to make future payments."[5] *Id; In re Gronski,* 86 B.R. 428, 432 (Bankr.E.D.Pa.1988).

■ Therefore, under the current version of § 1329 the Trustee has the right to request modification of the debtor's plan but only for one of the specific purposes set out in § 1329(a)(1), (2), or (3) and only if there has been a substantial change in the debtor's circumstances that was not anticipated at the time of confirmation. *Id.* The burden of proving the change in circumstances is on the movant, and as to other matters which do not relate to the debtor's change in circumstances, the confirmed plan is *res judicata; Id.* Such matters, one might suppose, as trustee's fees.

Here, the Trustee is not seeking modification of the debtor's confirmed plan but is merely objecting to his treatment under the modified plan which the debtor does not propose to change from the treatment the Trustee received under the original confirmed plan.

The debtor's modified plan was properly noticed to all creditors and the only objecting party was the Trustee. The court finds that the debtor's modifications are in compliance with § 1329(a) and the Trustee's objection is not well-founded. The court finds that the debtor's confirmed plan, as it applies to the rights of the Trustee is *res judicata.* *Gronski,* 86 B.R. at 432; *In re Bonanno,* 78 B.R. 52, 55–56 (Bankr.E.D. Pa.1987). *See also,* 11 U.S.C. § 1327(a).

In an effort to negotiate this dispute concerning the amount of the trustee's fees, the debtor filed an Amended Wage Deduction Order on March 14, 1989,[6] wherein the debtor's employer would be required to send about one-half of the weekly wage deduction directly to the mortgage lender, First Source Bank, in care of their attorneys, Nickle & Piasecki, and the balance to the Trustee.

In dealing with secured creditors, the debtor has the ability to maintain current payments which, based on the initial obligation, will extend beyond the life of the plan as well as to cure defaults on that same claim within a reasonable time. 11 U.S.C. § 1322(b)(5). The Bankruptcy Code does not guide the court in its determination of which claims may be paid directly by the debtor and which claims should be paid through the Trustee. *In re Kline,* 94 B.R. 557, 559 (Bankr.N.D.Ind.1988). The legislative history of chapter 13 suggests that Congress was concerned with the "flexibility" of the debtor in the formulation of a chapter 13 plan. Chapter 13, it was explained, "... is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions." S.Rep. No. 989, 95th Cong., 1st Sess. 141 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5927.

Accordingly, the court must give deference to the pursuit of "flexibility" in its

---

**5.** Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong. 1st and 2nd Sess. 215, 221 (1981–82).

**6.** The Amended Wage Deduction Order was entered on March 22, 1989, by the court.

determination of the propriety of the debtor acting as disbursing agent for certain payments and it is a matter committed to the discretion of the court. *Kline,* 94 B.R. at 559; *Yarnell v. Erickson Partnership (In re Erickson Partnership),* 83 B.R. 725, 728 (D.S.D.1988); *Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 486 (5th Cir.1982), superceded by statute as stated in, *Yarnell v. Erickson Partnership (In re Erickson Partnership),* 83 B.R. 725, 728 (D.S.D. 1988).

The legislative history supports, and several courts have held, that based on § 1325(a),[7] if all six elements of that section are met then confirmation is mandatory. *See, e.g., In re Polak,* 9 B.R. 502, 506 (D.Mich.1981); *G.F.C. Consumer Discount Company v. Scott (In re Scott),* 7 B.R. 692, 694 (Bankr.E.D.Pa.1980); *In re Bonder,* 3 B.R. 623, 626 (Bankr.E.D.N.Y.1980); *Cleveland Trust Company v. Keckler (In re Keckler),* 3 B.R. 155, 157 (Bankr.N.D.Ohio 1980); H.R.Rep. No. 595, 95th Cong., 1st Sess. 430 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963; 5 *Colliers on Bankruptcy* (MB) ¶ 1325.01 at 1325–4 (15th ed. 1988, supp. September 1988).

Additionally, § 1325(a)(6) requires that the debtor "... be able to make all payments under the plan and to comply with the plan." Therefore, when the court is confronted with the debtor's request to be disbursing agent for, as in the case at bar, a mortgage payment that will extend beyond the life of the plan, then in the confirmation determination the bankruptcy court must consider whether the debtor will be able actually to make those payments and comply with the plan. *Foster,* 670 F.2d at 486. Where, however, the debtor merely seeks to have the employer act as the disbursing agent rather than the debtor or the Trustee, the application of the mandate of § 1325(a)(6) becomes less crucial.

This court finds persuasive those decisions wherein the courts have concluded that Congress did not rule out by § 1326(b) the possibility of direct disbursement "under the plan" by some entity other than the Trustee. *In re Case,* 11 B.R. 843, 846 (Bankr.D.Utah 1981); superceded by statute as stated in *Yarnell v. Erickson Partnership (In re Erickson Partnership),* 83 B.R. 725, 728 (D.S.D.1988); *In re Hines,* 7 B.R. 415, 420 (Bankr.D.S.D.1980); *In re Centineo,* 4 B.R. 654, 654 (Bankr.D.Neb. 1980); H.R.Rep. No. 595 at 430, 1978 U.S. Code Cong. & Admin.News p. 6385 (wherein it was commented that 11 U.S.C. § 1326(b) "... designates the Trustee as disbursing agent, unless the plan or the order confirming the plan provides otherwise.").

---

7. 11 U.S.C. § 1325. Confirmation of Plan
   (a) Except as provided in subsection (b), the court shall confirm a plan if—
   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder; and
   (6) the debtor will be able to make all payments under the plan and to comply with the plan.

The rationale for allowing the trustee to act as disbursing agent was succinctly set out by Judge Mabey in *Case* where he stated:

> The rationale behind this preference for disbursement under the plan through the trustee is readily apparent. It is primarily the trustee's duty to insure that payments are made under the plan and to supervise execution of the plan. Therefore, a creditor should have the right to insure protection of its interests under the plan by refusing to deal further directly with the debtor with whom it may have experienced problems in the past. Rather, the creditor should be entitled to have the trustee more effectively exercise her supervisory duty by taking the responsibility of collecting and disbursing the payments to the creditor, leaving the trustee the hassle of insuring the payments are being made and of bringing to the attention of the Court when the payments are in arrears and the plan is not being carried out as confirmed. Similarly, if the trustee feels that she can more effectively fulfill her supervisory duty over the execution of the plan by having all payments made through her, in the absence of some convincing reason either business or otherwise to the contrary, she ought to be entitled to require payments to be made directly to her

*Case*, 11 B.R. at 846.

■ However, in the case at bar these concerns have been alleviated by the fact that First Source Bank will be guaranteed its mortgage payments which will be paid by the debtor's employer through wage deduction as long as the debtor remains employed. The Trustee could offer First Source Bank no greater guarantee.

Therefore, the court finds that the debtor's request to change the disbursing agent for his mortgage payment from the Trustee to his employer, via a wage deduction order, will not impair the debtor's ability to make payments under and to comply with the plan. 11 U.S.C. § 1325(a)(6).

Since the plan was previously confirmed and complied with the other conditions set out in § 1325(a), none of which have been altered by the debtor's modification, the court finds that the Modified Chapter 13 Plan can be confirmed.

■ A final issue to be addressed concerns the Trustee's fees. The determination of compensation for a standing chapter 13 trustee appointed by the United States Trustee is predicated only upon funds actually passing through the hands of the Trustee.[8] *Kline*, 94 B.R. at 559. Therefore, payments disbursed by the debtor, or as here by the employer, would not be considered in calculating the Trustee's compensation. *Id.*

### Conclusion

Accordingly, the court finds that the debtor's Modified Chapter 13 Plan should be CONFIRMED, the debtor's efforts to direct the employer to make direct disbursements to First Source Bank, the mortgage lender, are approved, and the Trustee's objection to confirmation is OVERRULED. The debtor is directed to submit a proposed order of confirmation reflecting the recommendations set out in this Memo-

---

8. 28 U.S.C. § 586. Duties, Supervision by Attorney General.

(2) Such individual shall collect such percentage fee from all payments *received by such*

*individual* under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee ... (emphasis added).

randum on or before April 10, 1989.

SO ORDERED.