In re Ray M. WATKINS, Mary Virginia
Watkins, Debtors.

Bankruptcy No. 96–70678.

United States Bankruptcy Court,
C.D. Illinois.

April 16, 1999.

John S. Narmont, Springfield, IL, for debtors.

Richard H. Narup, Springfield, IL, for Brandt Fertilizer.

Michael D. Clark, Peoria, IL, Chapter 12 Trustee.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

Conrad Noll, a prominent Springfield attorney and banker, used to offer this bit of advice to lenders and other people who don't like losing money:

A. Paternity is a matter of conjecture and opinion.

B. Maternity is a matter of certainty.

C. Value of collateral is a matter of conjecture and opinion.

D. Amount of debt is a matter of certainty.

This is a dispute about the value of collateral.

The Debtors, Ray and Mary Watkins, filed a petition pursuant to Chapter 12 of the Bankruptcy Code on March 18, 1996. One of the assets of the bankruptcy estate was a family farm of approximately 150 acres. The real estate was secured by a first mortgage to Agribank, FCB in the approximate amount of $200,000 and a second mortgage to Brandt Fertilizer.

On November 6, 1996, the Court held a valuation hearing on the Debtor's real estate. The Debtor's appraiser, Richard Samples, appraised the property at $167,-595.35. Brandt's appraiser, James Dodds, appraised the property at $275,000.00. Mr. Dodds admitted on cross-examination that his appraisal assumed that the land would be divided into three separate parcels to be sold separately. In addition, Brandt submitted a report from Wayne Briggs which criticized Mr. Samples' appraisal. Mr. Briggs' analysis of the Samples comparables suggested "a realistic bare land value near $1,300/acre for the subject." After considering all of the evidence, the Court found the value of the property to be $197,600.00. This finding resulted in Brandt being treated as an unsecured creditor.

On November 18, 1996, the Court entered a written Order determining the value of the real estate to be $1,300 per acre for a total of $197,600.00. Brandt did not appeal this Order.

On February 3, 1997, the Court confirmed the Debtor's Chapter 12 plan. The plan provided in paragraph 16 as follows:

That with respect to the claim of BRANDT CONSOLIDATED, INC., and the Court having determined the value of the real estate to be only $197,-600.00, the mortgage held by BRANDT CONSOLIDATED, INC. is null and void and of no consequence and BRANDT CONSOLIDATED, INC. is hereby ordered to immediately release its mortgage and shall therefore be treated as an unsecured creditor.

The Order of confirmation was not appealed.

On January 15, 1999, the Debtors filed a Request for Discharge. The Debtors assert that they "have completed all payments called for under the terms of the Plan."

On January 29, 1999, Brandt filed a Motion to Reconsider Court's Order of

November 18, 1996. Brandt's motion is premised on a January 6, 1999, administrative order of the Illinois Office of Banks and Real Estate adopting recommendations of the Real Estate Appraiser Board regarding Mr. Samples. The Board's recommendations were based upon Mr. Samples' appraisal of the 150 acres of farm land at issue in this proceeding. The Board criticized certain aspects of Mr. Samples' appraisal, including the omission of a particular comparable, the use of less appropriate comparables, and the failure to sufficiently prepare and utilize an income approach to valuation. The administrative order is currently on appeal.

At oral argument on Brandt's motion, Brandt's counsel advised the Court that one of its experts, Mr. Briggs, was also disciplined by the agency for his report concerning the subject real estate. The third appraiser in this case, Mr. Dodds, was not a licensed appraiser, and therefore not subject to administrative review.

11 U.S.C. § 502(j) provides in pertinent part as follows:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case . . .

Bankruptcy Rule 3008 provides as follows:

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

Conspicuously missing from both the statute and the rule is a time limit for the filing of a motion for reconsideration. However, courts will generally deny reconsideration of a claim after confirmation of a reorganization plan because such reconsideration would conflict with the binding effect of a confirmation order under 11 U.S.C. § 1227(a). *In re Duke,* 153 B.R. 913, 916–17 (Bankr.N.D.Ala.1993).

11 U.S.C. § 1227(a) provides as follows:

Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.

The Seventh Circuit has recognized the sanctity of confirmation orders. *Matter of UNR Industries, Inc.,* 20 F.3d 766 (7th Cir.1994); *Holstein v. Brill,* 987 F.2d 1268 (7th Cir.1993); *Matter of Chappell,* 984 F.2d 775 (7th Cir.1993); *Matter of Pence,* 905 F.2d 1107 (7th Cir.1990). An order confirming a Chapter 12 plan has *res judicata* effect as to all issues which were decided, or could have been decided at the time of confirmation. *In re Young,* 76 B.R. 504 (Bankr.E.D.Pa.1987); *In re Williams,* 96 B.R. 149 (Bankr.N.D.Ill. 1989); *In re Edelsberg,* 101 B.R. 386 (Bankr.S.D.Fla.1989). Where a debtor's treatment of the creditor's claim is clear, the creditor cannot complain after confirmation, even if the debtor's treatment of its claim is improper under the Bankruptcy Code or applicable nonbankruptcy law. *In re Szostek,* 886 F.2d 1405 (3d Cir.1989). Failure to appeal the confirmation order precludes a party from attacking any provision in the plan in a later proceeding. *Matter of Chappell, supra,* 984 F.2d at 782.

The claims allowance process, which includes the valuation of collateral, is a process that occurs preconfirmation. *In re Duke, supra,* 153 B.R. at 916. In this proceeding, it was imperative to determine the value of the collateral in order for the Debtors to put together their reorganization plan. Brandt was an active participant in these proceedings, promptly asserting its secured status, filing a proof of claim, objecting to confirmation of the Debtors' Chapter 12 plan, moving to dis-

miss the case, participating in the valuation hearing, and appearing at numerous other hearings. The Debtors submitted their amended plan to the Court for confirmation after the value of the real estate was determined. Brandt did not object to the confirmation of the amended plan. The Court confirmed the plan after finding that the plan complied with all of the requirements of Chapter 12 of the Bankruptcy Code. Brandt did not appeal this confirmation order. Because of the binding effect of § 1227(a) on creditors when a confirmed plan fixes the value of collateral and the unsecured status of a creditor's claim, Brandt is barred by *res judicata* from relitigating its status as an unsecured creditor. *In re Sealey Brothers,* 158 B.R. 801, 805 (Bankr.W.D.Mo.1993).

The unappealed confirmation order herein precludes Brandt from seeking reconsideration of the valuation order alone. The valuation could be altered only if the creditor were also entitled to revoke, vacate, or modify the confirmed plan itself. Brandt has neither sought relief from the plan itself nor alleged grounds which might entitle it to relief from the plan.

■■ 11 U.S.C. § 1229, which provides for postconfirmation modification, is an exception to § 1227. *In re Taylor,* 99 B.R. 902, 905 (Bankr.C.D.Ill.1989). However, postconfirmation modification is limited to the time between confirmation of the plan and completion of the plan payments. *Matter of Witkowski,* 16 F.3d 739, 742 (7th Cir.1994). Here, the Debtors have completed all payments provided for by the plan. Therefore, modification is untimely. Moreover, modification may not be used to correct an allegedly erroneous valuation. *In re Cooper,* 94 B.R. 550, 551–52 (Bankr. S.D.Ill.1989); *In re Pearson,* 96 B.R. 990 (Bankr.D.S.D.1989). A modification of valuation is not encompassed within any of the types of modifications authorized by § 1229(a).

■ Revocation of a confirmed plan is authorized by 11 U.S.C. § 1230. Revocation must be sought within 180 days of confirmation, and relief is limited to confirmation orders procured by fraud. The revocation proceeding must be brought as an adversary proceeding and there must be a showing of fraudulent intent. *Matter of Pence, supra,* 905 F.2d at 1110. Brandt did not act within 180 days of confirmation, did not bring an adversary proceeding, and has not made any allegations of fraud. There is no basis for the revocation of the confirmed plan.

■ After confirmation, a motion to reconsider under § 502(j) is the only means to question the validity of a claim. *In re Bernard,* 189 B.R. 1017, 1021 (Bankr. N.D.Ga.1996). This section provides a "narrow exception to the otherwise unwavering bar" which § 1227(a) places upon claim allowance after confirmation. *Bernard, supra,* 189 B.R. at 1022. Determination of whether there is sufficient cause to reconsider a claim under § 502(j) lies within the sound discretion of the Court. *In re Flagstaff Foodservice Corp.,* 56 B.R. 910 (Bankr.S.D.N.Y.1986).

■ Neither the Bankruptcy Code nor the Bankruptcy Rules define "cause" for reconsideration of a claim. However, courts generally agree that Bankruptcy Rule 9024, which incorporates Fed. R.Civ.P. 60, sets forth the standards for reconsideration of claims and helps define "cause" under § 502(j). *In re Farley, Inc.,* 211 B.R. 889, 893 (Bankr.N.D.Ill.1997); *In re Rankin,* 141 B.R. 315 (Bankr.W.D.Tex. 1992); *In re Cleanmaster Industries, Inc.,* 106 B.R. 628 (9th Cir. BAP 1989).

Rule 60 lists several available grounds for relief from a final judgment or order. The only grounds of any possible relevance to this proceeding are Rule 60(b)(2) for newly discovered evidence and the catchall of Rule 60(b)(6) for any other reason justifying relief.

A Rule 60(b)(2) motion must be brought within one year of the judgment or order in question. The present matter was brought more than one year after the or-

der of confirmation, and it is therefore untimely. *Egger v. Phillips*, 710 F.2d 292, 329 (7th Cir.1983).

In any event, the administrative decision disciplining Mr. Samples does not justify relief under Rule 60(b)(2). Newly discovered evidence is limited to (1) evidence in existence at the time of trial but not discovered until later; (2) evidence which could not have been timely discovered by due diligence; (3) evidence which is not merely cumulative or impeaching; (4) evidence which is material, and (5) evidence which would probably produce a new result at trial. All of these requirements must be met. *Matter of Wildman*, 859 F.2d 553, 558 (7th Cir.1988); *Peacock v. Board of School Commissioners*, 721 F.2d 210, 214 (7th Cir.1983).

The conclusions of the disciplinary agency were not in existence at the time of the valuation hearing or confirmation order and thus cannot qualify as newly discovered. *Rivera v. M/T Fossarina*, 840 F.2d 152, 157 (1st Cir.1988) (postjudgment conclusions by administrative officer did not qualify as newly discovered evidence). Moreover, the underlying reasons for the agency's conclusions were known, or could have been discovered by Brandt through reasonable diligence, prior to the valuation hearing.

Brandt cross-examined Mr. Samples at the valuation hearing. In addition, Brandt submitted its own appraiser's critique of the Samples appraisal. Thus, the agency's opinion regarding the Samples appraisal is cumulative evidence offered merely as further impeachment of the Samples appraisal.

The Court is not bound by the agency's criticisms of the Samples appraisal. The agency's standards may well be quite different from the standard used by this Court in valuing farmland in a Chapter 12 proceeding. Therefore, the agency's criticisms do not constitute material evidence. This is particularly true where the agency merely criticized the procedure used by Mr. Samples; the agency never said that Mr. Samples' value was wrong or purported to make any determination concerning the value of the property.

Further, the state administrative proceeding was a complaint against Mr. Samples' real estate appraisal license. A real estate appraisal license is not a prerequisite to qualify as an expert witness. *See In re Southern Industrial Banking Corp.*, 71 B.R. 351, 368 (Bankr.E.D.Tenn.1987) (non-CPA may testify as an expert witness despite prohibition in state law). Indeed, Brandt's own appraiser, Mr. Dodds, was not a licensed appraiser; he had not finished the course work or taken the test necessary to obtain his license. Thus, the status of Mr. Samples' license was not material evidence. The Court qualified Mr. Samples as an expert based upon his specific knowledge of farm sales in the relevant area, 13 years of experience including 10 years of doing appraisals for Agribank, numerous court appearances, training, and education.

The agency's criticisms of the Samples appraisal would not have affected the result of the valuation hearing. The Court did not accept the Samples appraisal at face value. Instead, the Court made its own determination of value based upon all of the evidence. The Court's value was approximately 18% higher than Mr. Samples' value.

The agency criticized Mr. Samples for failing to use a particular comparable sale. However, that comparable sale was included in another appraisal before the Court and it was considered by the Court. The agency also questioned the appropriateness of the comparables used by Mr. Samples. Mr. Samples testified extensively about the appropriateness of his comparables. In addition, the Briggs report consisted primarily of Mr. Briggs' criticism of the five comparable sales used by Mr. Samples. The Court considered all of this evidence in reaching its valuation.

The agency criticized Mr. Samples for failing to include an income approach to

valuation. This would have been a complete waste of time. As Mr. Samples knows from his many appearances before the Court and as the Court explained to Brandt's attorney at the beginning of the valuation hearing, this Court does not use an income approach to valuing farmland in a Chapter 12 proceeding. It would have been futile for Mr. Samples to use an income approach in an appraisal which he was preparing specifically for use in a Chapter 12 proceeding.

 The only competing appraisal offered by Brandt was the Dodds appraisal, which assumed that the land would be divided up into separate smaller parcels and sold separately. This is not a proper method for valuing property which a Chapter 12 debtor will be retaining for use in implementing the reorganization plan. The Debtors' current and prospective use of the real estate, i.e. as a full-time family farm, is the correct basis for an appraisal in determining the amount of a creditor's secured claim. *In re Brace*, 163 B.R. 274, 277 (Bankr.W.D.Pa.1994). Property retained for the debtor's use must be based upon replacement value (the cost of purchasing like property for the same use). *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). Replacement value is equivalent to fair market value, or the value a willing purchaser in the debtor's business would pay for a like property. *Rash, supra*, 117 S.Ct. at 1884, n. 2. The Dodds appraisal is not based upon the cost of acquiring a single like parcel to be used as a family farm. Thus, the Dodds appraisal is seriously flawed and cannot be accepted by the Court, regardless of the specific criticisms of the Samples appraisal. The comparables method of valuation used by the Court is the appropriate method of determining replacement or fair market value. *See In re Caudill*, 82 B.R. 969, 976 (Bankr. S.D.Ind.1988). The comparable sales used by both Mr. Samples and Mr. Dodds have already been considered by the Court in making its own valuation.

Given the problems with the Dodds appraisal, Brandt has failed to show any probability that reconsideration would lead to a new valuation in excess of the amount of the first mortgage indebtedness. Indeed, the Court's valuation was entirely consistent with the report submitted by Brandt's other witness, Mr. Briggs, in his critique of the Samples appraisal. Brandt has not satisfied any of the requirements for obtaining relief on the grounds of newly discovered evidence.

 Rule 60(b)(6) authorizes relief from a judgment or order on any other grounds justifying relief. A creditor seeking relief on these grounds must act within a reasonable time. Waiting to bring a reconsideration motion until the plan is near completion is not reasonable. *In re Haynes*, 107 B.R. 83, 87 (Bankr.E.D.Va. 1989). Although the agency order approving the Board's disciplinary recommendations was not entered until January 6, 1999, the Board's findings were entered on October 28, 1998. More important, the underlying grounds for which the Board criticized the Samples appraisal would have been known by Brandt all along: Brandt could have raised the same matters in an appeal of the confirmation order or valuation order. Instead, Brandt chose to wait for a disciplinary body to act against Mr. Samples, and now it relies upon that body's conclusions as a means to raise the same arguments which could have been raised in a timely appeal. Under these circumstances, and given the importance of finality in confirmation orders, the motion has not been brought within a reasonable time.

 Moreover, Rule 60(b)(6) relief is limited to extraordinary circumstances which create a substantial danger of an unjust result. *Industrial Associates, Inc. v. Goff Corp.*, 787 F.2d 268 (7th Cir.1986). There must be a showing of exceptional circumstances or grievous wrong evoked by an unforseen condition. *Duran v. Elrod*, 713 F.2d 292, 296 (7th Cir.1983). The

disciplinary agency's administrative order containing its criticisms of the Samples appraisal does not constitute an extraordinary or unforeseeable event, particularly since Brandt had every opportunity at the valuation hearing to raise the same criticisms.

Reconsideration of the valuation is not necessary to prevent an unjust result. For all of the reasons previously discussed, the agency's disciplinary action of Mr. Samples would not alter the result of the initial valuation.

If the initial valuation had been higher, Brandt would have received payments under the plan for the secured amount of its claim, thereby leaving less money available for unsecured creditors. The payments to Brandt would have satisfied and discharged its lien accordingly, and the Debtors would, upon completion of the plan, have received their discharge without continuing to be burdened by the lien. The relief sought by Brandt would not accomplish this same result. Instead of seeking to recover back payments made to unsecured creditors. Brandt seeks to retain a lien against the property. The Debtors would be in a worse position than they would have been in had a higher valuation been made at the outset. The Debtors relied upon the plan as confirmed in making payments thereunder, and reconsideration at this point in time would create, rather than prevent, an unjust result.

For the foregoing reasons, the Motion of Brandt Fertilizer to Reconsider Court's Order of November 18, 1996, is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.